TILLMAN REINERT, PLAINTIFF, v. ATLANTIC CITY RAIL-
ROAD COMPANY, DEFENDANT.

Argued January 19, 1927—Decided February 11, 1927.

**Negligence—Unusual Accident at a Railroad Crossing Alleged to
Have Been the Result of a Large Piece of Iron Dropped
From One of the Defendant's Trains, Causing Injury to
Plaintiff and to His Automobile—The Unusual Circumstances
Not Reviewed at Length, but Held, That the Case was a
Proper One For the Jury, Properly Presented—Verdict For
$20,000, However, Held Excessive and Reduced to $10,000, or
New Trial Ordered.**

On rule to show cause.

Before Justices BLACK and CAMPBELL.

For the plaintiff, *William C. French* and *Edwin G. Scovel.*

For the defendant, *French & Richards* and *Floyd H. Brad-
ley.*

PER CURIAM.

The trial of this case resulted in a verdict for the plaintiff
for $20,000. The suit was brought to recover damages for
personal injuries. The complaint charges negligence of the
defendant. The accident happened on the 30th of July,
1923, at Hunt's Lane crossing, in Camden county, in the
operation of defendant's train. It charges a piece of iron was
placed or fell upon the tracks of the defendant at that place.
It was allowed to fall upon the tracks from a passing train
or locomotive and it was permitted to be and remain upon
the tracks in violation of the duty owed by the defendant to
persons using the crossing. The defendant obtained a rule
to show cause and writes down thirteen reasons for a new
trial. The trial took several days. The record consists
of two printed volumes of nine hundred and thirty

pages. The accident was a most unusual occurrence. It occurred in the language of the plaintiff: "When I got across the side—that is, another extra track that's there—and got near the middle of the track, when I think I was in second gear then, the car made a quick left-hand turn, an awful crash under, then, just I couldn't imagine what happened, that threw me, my head went through the windshield, and my both legs, the floor boards came up and caught my legs, and the steering column went under my breast here, and when the train, the car, stopped, before the car stopped; it was on fire * * *. This big piece of iron dropped out and dropped down on the track, where it was fast to in the floor boards. After the floor boards burned, this piece of iron dropped down and dropped across the track."

The piece of iron was in evidence as *Exhibit P 1;* it was U-shaped, measured thirty-four inches, the shorter sides twenty-three and one-half and twenty-four inches; it is four inches wide, three-eighths of an inch in thickness, with seven three-eighth-inch holes drilled therein and with some letters stamped thereon, such as "P & R R." What the mark between the P and R really is is in dispute. The piece of iron, when hit by the automobile, as placed by a witness Landen, was between the westerly rail of the southbound track and the easterly rail of the siding. At the crossing there were three sets of tracks.

The case has other unusual incidents. This is the third trial. The defendant's proofs show that the plaintiff was in three other accidents and that he was fifty-one years old at the time of the trial.

Our reading of this voluminous record leads us to the following conclusion:

*First.* There is ample evidence to justify the conclusion that the piece of iron was the cause of the accident, and that it happened as the plaintiff said. In fact, this is not seriously controverted by the defendant.

*Second.* The defendant denies that the piece of iron was upon the crossing through any of its instrumentality or that the defendant had any connection with it. It says it did not

do this, it did not suffer this to be done, it is not guilty as charged. This is the precise question for solution. It would serve no useful purpose to analyze the evidence on this point *pro* and *con*. The respective counsel have filed elaborate and exhaustive briefs on this point, which have been exceedingly helpful to the court. Our conclusion is that this was a jury question properly submitted by the trial court to the jury for solution. We are unwilling to disturb the verdict on this ground.

So, the question of the plaintiff's contributory negligence was one for the jury also to settle.

We find no error in the trial court's refusal to charge the defendant's second request, in reference to making inspection of its tracks once in every twenty-four hours as a reasonable inspection. This topic was clearly and adequately covered by the trial judge in the charge to the jury. The only other question that calls for discussion is whether the verdict of $20,000 is excessive.

It seems unusual, if not a significant circumstance, that while the plaintiff claims serious personal injuries, no physician who attended him until about a year and a half after the injury was called at the trial to testify. As stated, he had been in three previous accidents. Dr. Roscoe L. Moore has known the plaintiff about seven years, has attended him since the first trial, and he is now worse. Other doctors testified: Dr. Swithin Chander examined the plaintiff four times for the purpose of testifying; Dr. Wm. Wescott examined the plaintiff for the purpose of testifying. So, Dr. Franklin Buzby, an orthopedic surgeon of Cooper Hospital, examined the plaintiff for the defendant company; Dr. Francis S. Ferris, who examined the plaintiff on September 5th, 1923, following the accident, he testified that the plaintiff at that time complained of a cut on the left side of his neck above the scapula, an injury to the chest and shock. There was no discoloration, no external marks of violence and no swelling. Dr. A. Haines Lippencott, the company physician, testified that on April 27th, 1925, "Well, he had varicose veins in both legs, very bad, very pronounced."

26

Other witnesses called and testified: Lewis C. Thompson, the defendant's investigator, that on September 6th, 1923, the plaintiff said: "My injuries don't amount to anything. I got a little sore spot, but I am pretty well off again; all I want the company to pay me for is my car." Record, page 693. Carl Woolston saw the plaintiff work around the garage after the accident; "about the same, as far as I could see," *i. e.*, before the accident. Record, page 802.

Frederick Enders, in September, 1925, saw the plaintiff; "he was underneath a car fixing the car." Record, page 803. Richard Enders fixes the date as October 18th, 1925: "We seen the man underneath the car." Record, page 827. Dr. Swithin Chander, as stated, examined the plaintiff four times for the purpose of testifying the last time, the Thursday before the trial, *i. e.*, on the 11th of February, 1926; the first time the last of April, 1924.

The trouble with this testimony is that it attempts to prove too much. There was no evidence as to plaintiff's earnings just before the accident and after the accident, *i. e.*, from July 30th, 1923, to the date of the trial, February 15th, 1926. No evidence as to any expenditures for medicines and doctors' bills. The plaintiff testified that he was fifty-one years of age; he was an electrical and steam engineer and had earned between $50 and $125 a week while employed by the Victor Talking Machine Company eleven years ago, *i. e.*, in 1915; that he had been in the garage business four years before the accident and is still so engaged. We think the verdict of $20,000 is not supported by the evidence. It is excessive. If the plaintiff will accept a verdict for $10,000 and remit the excess, the judgment may stand for that sum, otherwise, the rule will be made absolute.